**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Nugent,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-19-00592-TUC-DTF<br><br>**ORDER** |

  Plaintiff Daniel Nugent (Nugent) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Nugent filed an opening brief. (Doc. 20.) The Commissioner filed an answering brief. (Doc. 21.) Nugent filed a reply brief. (Doc. 22.) The parties have consented to a decision being rendered by the undersigned United States Magistrate Judge. (Doc. 13.) As more fully set forth below, based on the pleadings and the administrative record (AR) submitted to the Court the decision of the Commissioner will be vacated and this matter will be remanded for further proceedings.

## BACKGROUND

  Nugent was born in 1976 and previously worked as a laborer in construction and landscape, and a mechanic. (AR 266, 280.) He has a ninth-grade education.[1] (AR 59, 416, 452.)

  On March 15, 2016, Nugent filed a Title II application for a period of disability and

---

[1] There is a discrepancy. There are references that Nugent has a tenth-grade education. (AR 280, 375, 427.) This difference is minimal and of no consequence.

disability insurance benefits (DIB) alleging disability beginning May 1, 2016. (AR 16.) Also, on March 15, 2016, Nugent protectively filed a Title XVI application for supplemental security income alleging disability May 1, 2016. *Id*. On September 26, 2016, Nugent's claims were denied initially. *Id*. On February 14, 2017, Nugent's claims were denied on reconsideration. *Id*.

Nugent filed a request for hearing on March 24, 2017. (AR 16.) On July 24, 2018, an administrative hearing was held before Administrative Law Judge (ALJ) Larry E. Johnson. (AR 33-77.) Upon the advice of counsel, Nugent amended his alleged onset date to June 30, 2012. (AR 16.)

On November 20, 2018, the ALJ issued his unfavorable decision denying Nugent's claims. (AR 16-27.) The Appeals Council denied Nugent's request for review thus making the ALJ's unfavorable decision the Commissioner's final decision for purposes of this Court's review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (AR 1-3.)

At step one, the ALJ determined that Nugent had not engaged in substantial gainful activity since June 30, 2012. (AR 18.) At step two, the ALJ decided Nugent has the following severe impairments: "shoulder impairments status post multiple shoulder surgeries and bilateral knee degenerative joint disease." (AR 19.) The ALJ concluded that Nugent does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (AR 21.)

After step three and before step four, the ALJ determined Nugent has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitation:

> [T]he claimant could stand/walk for a total of six hours in an eight-hour workday with normal breaks. He could sit for six hours in an eight-hour workday with normal breaks. The claimant's ability to push pull is limited on the right to both lifting and carrying. The claimant could push and pull the lower weight limits of light. The claimant could never pull with force. He could frequently stoop and climb ramps and stairs. He could never crawl or climb ladders, ropes, or scaffolds. The claimant could occasionally balance or crouch. The claimant is right hand dominant. He could frequently kneel but could only use his left side to lift himself up. He does not have any limitation in fine manipulation with the left upper extremity.

> The claimant does not have any limitations in feeling with the left upper extremity. However, the claimant could occasionally feel with the right upper extremity. With the left upper extremity, the claimant could reach in any direction, including overhead. With the right upper extremity, the claimant could occasionally reach forward. The claimant does not have any visual, communicative, or hearing limitations. The claimant is unable to withstand exposure to unprotected heights or fast[-]moving machinery. The claimant is unable to perform work where the potential safety of others is impacted.

(AR 21.) At step four, the ALJ determined Nugent was unable to perform any past relevant work. (AR 25.) The ALJ established that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework Nugent is not disabled independent of whether his job skills were transferable. (AR 26.) The ALJ relied upon testimony given by a vocational expert (VE) to find that Nugent could perform the jobs of furniture rental clerk and usher. *Id.*

Nugent, a younger person in the eyes of the administration. (AR 280.) Nugent has past relevant work as a landscape laborer and as an oil changer. (AR 25.) His threshold is less than sedentary under the applicable Vocational Rules.

Nugent alleges disability because of depression, anxiety, post-traumatic stress disorder (PTSD), shoulder impairments and knee impairments. In his appeal Nugent focuses only the ALJ's treatment of his mental health issues, and in particular his ability to interact with others. (Doc. 20 at 3.)

From 2015 through 2016, Nugent received treatment a La Frontera Behavioral Health for depressive disorder, alcohol dependence, generalized anxiety disorder and post-traumatic stress disorder (PTSD). (AR 425-68.) From 2016 through 2018, Nugent received mental health care from his primary care physician at the Marana Health Center. (AR 493-769.)

On September 16, 2016, Nugent underwent a consultative examination performed by Michael P. Christiansen, Ph.D. (AR 421-22.) Regarding Nugent's social interaction, Dr. Christiansen opined:

> The claimant demonstrated moderately limited ability to interact appropriately with the general public, peers, or

> supervisors. He demonstrated an attitude and behavior that was minimally engaging and superficially cooperative. He provided responses that were relevant, organized and logical but terse and minimal. He did not offer spontaneous speech and did not elaborate in his responses unless prompted to do so. His recent domestic violence charge corroborates limitations in interpersonal functioning. Other than his dirty fingernails and hands he had an overall had [*sic*] a neat and clear appearance. He was not detectably malodorous.

(AR 421-22.)

In his adult function report completed on June 17, 2016, Nugent reported the "mental part keeps me away from people and the stuff I use (*sic*) to enjoy." (AR 324, 332.) Nugent claims to suffer from nightmares. (AR 325.) Nugent reported forgetting to take care of himself and that his girlfriend reminds him to take his medication. (AR 326.) Nugent reported that he does not do housework or yard work because of his shoulder and post-traumatic stress disorder. (AR 327.) He reports going outside daily but not leaving the house and that he cannot go out along due to anxiety. *Id*. He does not have a driver's license. *Id*. Nugent reported that other people do not understand him. (AR 329.) He reported that he can only pay attention for 30 seconds and that he cannot read. He admits being able to follow spoken instructions if he remembers what he is told to do. *Id*. He reports not being able to handle stress well, that he does not do well with changes in routine and that he gets along with authority figures "semi ok." (AR 330.) He reported taking oxycodone, morphine and buspirone for his conditions. (AR 331.)

At the administrative hearing Nugent testified that he stays in bed a lot during the day because of his depression and anxiety. (AR 54.) He testified that he gets overwhelmed after a few minutes if he tries to play with his kids or work on his truck. (AR 55.)

Vocational expert (VE) Erin Welsh (Welsh)[2] testified at the administrative hearing that if an individual were moderately limited in social interaction and could only occasionally interact with others, in addition to the physical limitations outlined by the ALJ, there would be no jobs available that the individual could perform. (AR 75-76.)

---

[2]In the decision, the ALJ listed the vocational expert as Marcos R. Molinar. (AR 16.) The Court believes this is an oversight. Mr. Molinar had been requested to appear but did not testify. (AR 211.)

- 4 -

## ISSUES ON REVIEW

Nugent raises two (2) issues on review: (1) the ALJ gave inappropriate weight to the examining source opinion of Dr. Christiansen; and (2) the ALJ failed to provide clear and convincing reasons to discount Nugent's symptom testimony. (Doc. 20 at 2.) Nugent's appeal is limited to his mental capabilities—he "does not quarrel with the ALJ's assessment of his physical capabilities." *Id.* at 9. The Commissioner argues against all of Nugent's claims of error. (Doc. 21.)

## STANDARD OF REVIEW

"An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney ex rel. Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389,

400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Even if the ALJ made an error, courts may affirm if the error was harmless, in other words that it was "inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). Courts cannot "affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (quoting *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001)); *see Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

## DISCUSSION

**Weight Assigned to Dr. Christiansen's Opinion**

Nugent argues the ALJ inappropriately discounted Dr. Christiansen's opinion regarding his ability to interact with others. (Doc. 20 at 7.) He contends the ALJ misinterpreted Dr. Greg Hunter's description that Nugent was "pleasant and cooperative" as inconsistent with Dr. Christiansen's opinion that Nugent had moderate limitations in social interactions. (Doc. 20 at 7-8.) Nugent argues that the ALJ "asserted" his own medical opinion over that of Dr. Christiansen's and that it was "error for the ALJ to assume that simply because a neurologist describes a patient as pleasant and cooperative during a brief interaction, the patient must therefore not be as limited in social interaction as an examining psychologist opines." *Id*. at 8.

The Commissioner responds that the record is consistent with only mild mental limitations. (Doc. 21 at 5.) The Commissioner did not acknowledge the ALJ found "*no* limitation in interacting with others." (AR 19 (emphasis added); *see* Doc. 21 at 5-9.) Further, the Commissioner argues that the ALJ's conclusion was reasonable based on

reports that Nugent was pleasant and cooperative, made good eye contact, and was in no acute distress. *Id.* at 8 (citations omitted). The Commissioner also relies on the ALJ's decision crediting the two state agency consultants. *Id.* The two state agency consultants listed Nugent as having mild social limitations. (AR at 99, 118, 133.) Finally, the Commissioner argues that any error would be harmless because not every mild to moderate limitation must be considered in the RFC findings. (Doc 21 at 10.)

Interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2); *see Lim v. Saul*, No. 18-cv-07519-VDK, 2020 U.S. Dist. LEXIS 89815, at *14 (N.D. Cal. May 20, 2020). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (alteration in *Ryan*) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes*, 881 F.2d at 751). Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* (alteration in *Revels*) (emphasis omitted) (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996)).

Nugent applies the "specific and legitimate" reasons standard. (Doc. 20 at 7.) The Commissioner does not argue that the ALJ provided "specific or legitimate reasons" for rejecting or discounting Dr. Christiansen's opinion as to Nugent's ability to interact with others. (*See generally* Doc. 21 at 5-9.) Instead, the Commissioner supports the ALJ's decision with references in the record that are not included or referenced by the ALJ. *See generally id.* Because Dr. Christiansen's opinion is contradicted, the ALJ was required to

provide specific and legitimate reasons for rejecting it. (AR 84, 99, 118.)

Here, the ALJ stated:

> Consultative examiner, Michael Christiansen, Ph.D., stated the claimant did not demonstrate "substantial limitations in ability to understand and remember simple instructions" [AR 421.] However, he stated it would be helpful to do formal testing to clarify the severity of the claimant's limitations in understanding and remembering complex or detailed instructions. He indicated the claimant was able to sustain attention throughout the 60-minute examination. He stated the claimant had terse responses and a flat affect which "would likely interrupt his work day or work week to a moderate degree" [*Id.*]. He indicated the claimant demonstrated a moderate limitation in the ability to interact with others. He stated the claimant's behavior was minimally engaging and superficially cooperative [*Id.*]. He indicated the claimant's terse responses and restricted (sic) indicate the claimant has a moderate limitation in responding appropriately to workplace stressors [AR 422.]. He stated the claimant did not have any limitations in traveling, setting realistic goals or making plans [*Id.*].
>
> Dr. Christiansen's opinion is assigned partial weight. The opinion the claimant could understand and remember simple instructions is assigned significant weight. This is consistent with the record which indicates the claimant's memory was intact [AR 434, 495.]. However, the opinion the claimant has moderate limitations in interacting with others, responding appropriately to workplace stress, and completing a workday/workweek without interruptions are assigned little weight because they are not consistent with the medical evidence. The evidence indicates the claimant's insight and judgment were good, which indicates the claimant would be able to respond appropriately to workplace stress [AR 442, 445.]. The claimant's concentration was described as fair but the claimant denied difficulty concentrating [AR 428, 434, 679, 691.]. Additionally, the undersigned finds the claimant does not have a limitation in interacting with others because the claimant was described as pleasant and cooperative [AR 410, 418.].

(AR 20)

The ALJ offered the conclusory statement that Dr. Christiansen's conclusions were "not consistent with the medical evidence." (AR 20.) The only example or explanation of this statement regarding interacting with others is that Nugent "had been described as pleasant and cooperative. *Id.* (citing AR 410, 418). Dr. Hunter is a neurologist that examined Nugent; he provided conclusions regarding his physical injuries but "defer[red]

to psychiatry/psychology for additional insight" regarding Nugent's mental health issues. (AR 409, 411.) He described Nugent as "pleasant . . . and cooperative." (AR 410.) Dr. Christiansen acknowledged that Nugent was "minimally engaging and superficially cooperative." (AR 418.) Dr. Christiansen noted that Nugent's responses "were relevant, organized and logical but terse and minimal" and that Nugent failed to "offer spontaneous speech" and would "not elaborate in his responses unless prompted to do so." *Id.* Accordingly to Dr. Christiansen, Nugent "demonstrated moderately limited ability to interact appropriately with the general public, pears, or supervisors." (AR 421.)

The ALJ did not explain how Dr. Hunter's description of Nugent conflicts with Dr. Christiansen's conclusion or description. (AR 20, 410.) Given that the ALJ's analysis ignores evidence in the record that Nugent's interactions with people were strained,[3] the ALJ failed to provide "specific and legitimate" reasons for rejecting Dr. Christiansen's opinion. *See Shannon B.C. v. Comm'r SSA*, 6:19-cv-00843-AC, 2020 U.S. Dist. LEXIS 228723, at *29-32 (D. Or. Dec. 7, 2020) (finding ALJ failed to provide "specific and legitimate reasons" to reject examining physician's opinions regarding limitation in interacting with others when claimant had been described as pleasant or lacking irritability); *Lim*, 2020 U.S. Dist. LEXIS 89815, at *14 (requiring ALJ to explain how description of "pleasant and cooperative" on one occasion and live-in girlfriend translated to ability to relate to or work with supervisors, co-workers, and the public). The ALJ did not provide a detailed and thorough summary of the evidence, which may have satisfied this requirement. (AR 16-27.)

This error was not harmless as limitations in Nugent's ability to interact with supervisors, co-workers, or the public could substantially erode the number of jobs available to Nugent. *See Uranna G. v. Saul*, 3:18-CV-02117-RNB, 2019 WL 5342537, at *3 (S.D. Cal. Oct. 21, 2019) (citing cases in which ALJs failed to include mild mental limitations in assessment of claimant's RFC); *see also Marsh*, 792 F.3d at 1172 (limiting

---

[3] AR 55 (Nugent's testimony of being overwhelmed in five minutes), 430 (difficulty going into groups, easily agitated), 305 (girlfriend reporting that Nugent was very social but now "gets made that people don't understand").

harmless error review to grounds originally invoked by ALJ). The Commissioner cites *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007), to argue that the ALJ did not need to provide for every possible mild to moderate limitation in his RFC findings. (Doc. 21 at 9.) This case is distinguishable from the facts here. In *Hoopai*, the issue was whether the ALJ could properly rely on the grids without the assistant of a vocational expert. 499 F.3d at 1077. Here, the ALJ had the benefit of a VE, who opined on the number of jobs available under different scenarios such as if Nugent suffered from a moderate limitation in social interaction. (AR 75-76.) And the VE agreed that moderate social abilities would "eliminate" the jobs Nugent could perform with his physical limitations. *Id.* Clearly, this error is not "inconsequential to the ultimate nondisability determination," and therefore, it is not harmless. *See Ford*, 950 F.3d at 1154 (quoting *Tommasetti*, 533 F.3d at 1038).

This Court finds that the ALJ erred by failing to provide specific and legitimate reasons for discounting Dr. Christiansen's opinion Nugent suffered from moderate limitations in his ability to interact with people and that this error was not harmless.

**Credibility Assessment**

Nugent suggests that the ALJ improperly rejected his testimony. (Doc. 20 at 12.) Because this matter must be remanded, the Court will not reach this issue. The ALJ may consider Nugent's argument or reevaluate Nugent's testimony.

**Remedy**

Nugent requests an award of benefits. (Doc. 20 at 9, 14.) The Commission asserts that if there is reversible error that "the 'ordinary remand rule' applies and the only appropriate remedy would be to remand for additional administrative proceedings and a new decision." (Doc. 21 at 15.)

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The proper course is generally to remand to the agency for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry, often labeled the

"credit-as-true" rule:

> First, [the Court] asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, [the Court] determines whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, [the Court] will then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (internal quotation marks and citations omitted). The Court has discretion to remand for further proceeding even if it reaches the third step. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks and alterations omitted).

Here, the first step is satisfied. The ALJ failed to provide legally sufficient reasons for discounting Dr. Christiansen's opinion.

Applying step two, the Court determines there are outstanding issues that must be resolved before a disability determination can be made. The record contains conflicting medical opinions and mixed findings about the extent of Nugent's limitation. (AR 99 (mild limitation, 118 (same), 133 (same), 421 (moderate limitation in interacting with others), 428 (anxiety "high"), 431 (same), 434 (same), 441 ("increased anxiety"), 448 (reports "anxiety around people outside of his home"), 498 (denies depression), 506 (denies depression and anxiety), 517 (same), 547 (same), 580 (same), 779 (denies depression), 788 (same).) Further administrative proceedings to weigh these conflicting opinions and findings would be useful.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. § 405(g) the decision of the Administrative Law Judge is **vacated** and this matter is **remanded** for proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly and close this case.

Dated this 3rd day of March, 2021.

Honorable D. Thomas Ferraro
United States Magistrate Judge